**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: ) | | CHAPTER:  **11** |
| ) | | |
| Greenville United Christian Ministries, ) | | Case No. 10-07014-HB |
| a South Carolina non-profit corporation ) | | |
| P.O. Box 1273, Greer, SC 29652 ) | | |
| ) | | |
| Debtor ) | | |
| ) | | |

**DEBTOR'S DISCLOSURE STATEMENT**

The above listed debtor(s), hereinafter, Debtor and/or Debtor-in-Possession, provides this Disclosure Statement to all of its known creditors in order to disclose that information deemed by the Debtor to be material, important, and necessary for all creditors to arrive at a reasonably informed decision in exercising their right to vote on Debtor's Plan of Reorganization.

This Disclosure Statement has been filed with the U. S. Bankruptcy Court in Columbia, South Carolina.  A Plan of Reorganization was filed as well. Both include a "Schedule of Payments" which itemizes the amounts to be paid to each creditor.

By the time you receive a copy of this Disclosure Statement, which should be accompanied by a copy of the Plan of Reorganization and a Voting Ballot, a hearing on the Disclosure Statement will have already been held and an order approving it will have been issued by the Bankruptcy Judge.  This is the procedure unless you have requested a copy of the Disclosure Statement prior to the hearing.

The next step is for you to vote to accept or reject the Debtor's Plan of Reorganization. The court has scheduled a hearing on the Plan of Reorganization and you should have been or will be notified of the exact time, date and location.  Creditors may vote on the Plan of Reorganization by filling out and mailing the accompanying Ballot to the Bankruptcy Court.  As a creditor your vote is very important.  The Plan of Reorganization can be confirmed by the Court if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class voting on the Plan.  In the event the requisite acceptances are not obtained, the court may nevertheless confirm the Plan if the court finds the Plan accords fair and equitable treatment to the class rejecting it.

It is important in making your decision to accept or reject the Debtor's Plan of Reorganization to especially review the "liquidation analysis" section of the Disclosure Statement.

The question in a bankruptcy reorganization (such as Chapter 11) is whether or not the creditor receives an amount equal to what it would have received under a bankruptcy liquidation (i.e., under Chapter 7), not whether or not they receive all that is owed to them.  It is, therefore, important for a creditor to understand that simply because the creditor does not like bankruptcy or is not going to receive all of its money under the Plan, does not mean that the creditor should reject the Plan or not vote on the Plan at all.  Again, therefore, it is important to review the liquidation analysis.  Of course, a creditor will want to review the remaining portions of the Disclosure Statement as well.

The Debtor's Plan of Reorganization is based upon the Debtor's belief that the present forced liquidation (Chapter 7) net value of its principal assets is so small as to offer the potential of only a minimal recovery to creditors. The Debtor believes that Chapter 11 reorganization will allow a more substantial recovery to creditors.

## ADEQUATE INFORMATION

A Disclosure Statement should contain adequate information to allow creditors to make an informed decision as to whether the confirmation of the Plan is in their best interest. The Disclosure Statement should be meaningful and easily understood. While circumstances will vary widely from one Chapter 11 case to the next, and, therefore, the parameters of "adequate information" may also vary, the following information is considered to be critical to an evaluation of the adequacy of a Disclosure Statement.

1. The necessary financial information, data and projections relevant to the creditors' decision to accept or reject the Chapter 11 Plan.
2. The assets and liabilities of the Debtor-in-Possession. Provide current balance sheet information and the source of appraisal values.
3. The events leading to the filing of the petition and the financial difficulties of the Debtor.
4. The operating condition and success of the Debtor while in Chapter 11.
5. An estimate of the return to creditors under a Chapter 7 liquidation (brief liquidation analysis).
6. A list of all claims against the Debtor, if practicable, showing the claims to which objections are anticipated and the reasons for the objections. A list of claims to be recognized under the Plan.
7. A statement regarding the Debtors compliance with all responsibilities to file tax returns and pay taxes due both pre and post petition.
8. An analysis of the potential tax consequences to the Debtor and other parties in interest resulting from the Plan.
9. The parties responsible for the future management of the Debtor (controlling persons), and the rate or amount of compensation to be paid for their services.
10. A detailed estimate of the administrative expenses contemplated under the Plan, including, but not limited to, attorneys fees, accountants fees and other professional fees and expenses. This includes quarterly fees to the United States Trustee.
11. The estimated collectability of the Debtors accounts receivables.
12. The risks posed to creditors under the Plan.
13. An analysis of potential preferential or otherwise voidable transfers and the Debtors plan if any to pursue such recoveries.
14. Anticipated future litigation (bankruptcy and non-bankruptcy context) and the estimated costs and source of revenue to fund such litigation.
15. A statement that the Plan represents a legally binding arrangement, and should be read in its entirety as opposed to relying on the summary in the Disclosure Statement.
16. The impaired classes under the Plan. Include a layman's definition of impairment.
17. A statement that approval of the Disclosure Statement by the bankruptcy court does not constitute approval of the Plan.
18. Whether any creditors committee exists and, if so, whether it participated in negotiating the terms of the Plan.
19. An explanation of the voting requirements for acceptance of the Plan.

## POST PETITION INFORMATION REGARDING DEBTOR

The debtor-in-possession, Greenville United Christian Ministries, a South Carolina non-profit corporation, a/k/a New Birth, is as its name proclaims a non-profit corporation under South Carolina law, and operates as a church ministry. Its corporate president and CEO is Bishop Getties L. Jackson. His salary is $48,000 per year. The debtor's board of directors consists of the following individuals: Sharon Davis, Dianne Ballenger, John Corley, Leroy Locklear, and Bishop Getties L. Jackson. The debtor's income and expenses, since the filing of the chapter 11 have been set forth in monthly operating reports it has been filing with the Court, which is required under bankruptcy law.

The debtor filed a prior chapter 11 in the United States Bankruptcy Court in the Northern District of Georgia on May 4, 2010 in case number 10-73481-wlh not realizing that, although the attorney who filed the case advised the debtor that jurisdiction was proper in the state of Georgia, it was not as the debtor owned no property nor did it have a domicile, residence, or principal place of business in the state of Georgia. The debtors paid that attorney approximately $9,500 in fees and costs. The case was dismissed July 26, 2010 on motion of the United StatesTrustee in Atlanta, Georgia citing that the Bankruptcy Court in Georgia lacked jurisdiction over this debtor. The Office of the United States Trustee filed a motion in the Bankruptcy Court in Georgia to have the attorney disgorge the fees. The debtor's present attorney, who filed the present case in the state of South Carolina September 29, 2010, provided information received from Bishop Getties Jackson to assist with the prosecution of that motion for disgorgement. Upon information and belief the matter is unresolved at the filing of this disclosure statement. The undersigned attorney contracted with the debtor to be paid the sum of $26,000 in attorney's fees, but agreed to file the chapter 11 for the purpose of stopping the foreclosure sale of the real property upon which the church and its 720 members attend religious services. The mortgagee, Assemblies of God Loan Fund also holds a lien on all of the personal property of the debtor. The undersigned attorney has agreed to accept the sum of $250 per week for legal fees involved in the case. At the time of the filing of this disclosure statement, the undersigned attorney had received only the sum of $250.

Subsequent to the filing of the petition, the undersigned attorney was successful in negotiating a reamortization of the mortgage debt with an arrearage of almost $250,000 being placed at the end of the contract. A reamortization schedule was provided for the debtor, which commences new payments January 1, 2011, at $7,000 per month with increased monthly payments in annual increments going forward. A copy of this settlement agreement was approved by the Bankruptcy Court in South Carolina on January 26, 2011, after the agreement had been served on all creditors and parties in interest in this case. The debtor has set forth in this disclosure statement a schedule of payments it proposes to pay to each creditor under its chapter 11 plan, which is a separate document filed with the Court.

## DEBTOR'S SOURCE OF INFORMATION

The source of information used in this Disclosure Statement includes the following:

(1)  Debtor's opinion
(2)  Debtor's schedules filed with the bankruptcy court
(3)  Financial statements prepared by, Debtor's accountant, with cooperation of the Debtor

(4) Notes and invoices provided by the Debtor
(5) Proofs of claims and other documentation filed and/or provided by creditors
(6) Monthly operating reports filed with the bankruptcy court
(7) Tax returns

## DEBTOR'S ADDITIONAL INFORMATION

All who review this Disclosure Statement should be aware that no official audit of the Debtor's books has been performed, and the information provided to the Debtor's accountant and attorney is provided by the Debtor and is unaudited and some information is based upon the Debtor's opinions.  Therefore, creditors and parties in interest should review the entire Disclosure Statement with that in mind.  Additionally, each should review not just the Disclosure Statement, but also the entire Plan of Reorganization in making a decision to accept or reject the Plan.  No actual risks are posed to creditors under this Plan, and based upon the liquidation analysis it is the Debtor's opinion and the opinion of its attorney that creditors will receive more under this Chapter 11 Plan than in a Chapter 7 liquidation of assets.  However, each creditor should understand that the Plan of Reorganization once approved by the Court does in fact represent a legally binding arrangement, and therefore, should be read in its entirety as opposed to relying solely on the summary of the Plan reflected in the Disclosure Statement.  Also, of importance is the fact that Bankruptcy Court approval of the Disclosure Statement does not constitute approval by that Court on the merits of the Plan of Reorganization.  These are two separate and distinct documents, and approval of one by the Court is determined separately and distinctly from approval of the other.

No creditors committee exists in this case.  No preferential or other avoidable transfers occurred in this case.  No future bankruptcy litigation is expected, except that the original attorney for the debtor, who filed an initial chapter 11 case in Atlanta, Georgia without jurisdiction there is under scrutiny by the Office of the United States Trustee in that region for apparently filing multiple bankruptcy cases without such jurisdiction, and according to that office in targeting religious organizations in doing so.  Therefore, the debtor's attorney in the present matter continues to investigate this bad conduct, and continues to seek disgorgement of the approximate $9,500 in fees paid to that attorney as does the office of the US Trustee in Atlanta.  Meanwhile, the debtor continues to operate its business of operating a church.  No securities are involved in this case.  No future transactions involving insiders or affiliates are expected.  The Debtor is consulting its CPA to prepare an analysis of the potential material federal tax consequences of the proposed Plan to the Debtor, a successor to the Debtor, and a hypothetical investor as per new 11 U.S.C. §1125(A)(1) of the Bankruptcy Reform Act of 2005 ("BAPCPA").

The Debtor asks that each creditor and party in interest review this Disclosure Statement and Plan of Reorganization, and the Debtor asks that each cooperate in allowing all a successful reorganization effort in order to bring resolve to these matters.

## DEBTOR'S TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**CLASS 1**

Except to the extent that the holder of a particular claim has agreed to a different treatment, with respect to a Class of claims of a kind specified in §507(a)(1), 507 (a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of such Class will receive:

(i) if such Class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim, or

(ii) if such Class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim.

**CLASS 2**

Except to the extent that the holder of a particular claim has agreed to a different treatment, with respect to a claim of a kind specified in §507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim. As to a claim of a kind specified in §507(a)(8), the holder of such claim will receive on account of such claim regular installment payments in cash

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under §301, 302, or 303; and

(iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under §1122(b).

**CLASS 3(A) THROUGH 3(C) SECURED CLAIMS**

Secured Claims held by creditors with security interests in real and/or personal property, including stock, shall be paid in monthly installments beginning on the Effective Date of the Plan and continuing until such time they are paid in full, unless the collateral securing these debts is to be surrendered, in which case any deficiency shall be treated as an unsecured claim. The property securing the Secured Claims will remain subject to the liens and interests of each secured creditor to the extent of the value of the collateral until such claims are paid. Class 3(A) through 3(C) shall be treated as separate classes for voting purposes, and shall be deemed to be impaired. If property upon which a lien or mortgage has been perfected is sold, then the value of such allowed secured claims shall be paid from proceeds of the sale in the order of priority according to 11 U.S.C. §363 and all other applicable sections of the Code.

**CLASS 4 - JUDGMENT CREDITOR CLAIMS AND MECHANICS LIENS**

Judgment Creditor Claims and Mechanics Liens, if any, are impaired under the Plan. If property upon which a judgment has been perfected is sold, then such Class shall be paid their allowed Claims without interest from any proceeds remaining from the sale of that property to which any judgment lien attached, in the order of the date of filing of judgment liens, but only after all Class 3 Claims secured by such property have been paid in full. Otherwise, judgment creditors shall be paid in monthly installments beginning on the Effective Date of the Plan and continuing until such time as they are paid in full. To the extent of any deficiency, Judgment Creditor Claims shall be treated as Unsecured Claims.

**CLASS 5 - EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

All Contracts which existed as of the Filing Date between the Debtors and any individual or entity, whether such contract be in writing or oral, which have not heretofore been accepted by Final Order or in the Plan of Reorganization, are hereby specifically rejected. Any person or entity claiming rights under an executory contract or unexpired lease rejected pursuant to the provisions of this Article or 11 U.S.C. Section 365 shall have thirty (30) days after the Confirmation Date to file a proof of claim, or such additional time as the Court, before that date,

may allow.  This Class is deemed to be impaired.

#### CLASS 6 - CLAIMS OF GENERAL UNSECURED CREDITORS

All Claims of general Unsecured Creditors shall be impaired under the Plan.  Such Class shall be paid a percentage of their allowed Claims without interest after the Effective Date as set forth in this Plan of Reorganization.  This Class is deemed to be impaired.

#### CLASS 7 - EQUITY OWNERSHIP.

Equity Owners will receive no monies; however, the stock ownership if the debtor is a corporation, by members of this Class shall be retained.  If the debtor is not a corporation, then equity ownership will include partnership property if the debtor is a partnership or any interest in personal or real property of the debtor if the debtor is an individual.  This Class shall be deemed to be impaired.

### DEBTOR'S LIQUIDATION ANALYSIS

The bankruptcy schedules which are filed with the Court reflect all property owned by the Debtor and all secured claims pertaining to that property.  By calculating the equity as follows, with regard to each item of collateral, we observe that the Debtor offers more to creditors in this Chapter 11 than they would receive in a liquidation of those assets:

### Liquidation Analysis Table

| Property Description | Retail Value per Schedules | Liquidation Value* | Secured Claim Amount | Exemption Claimed | Debtor's Equity |
|---|---|---|---|---|---|
| **Real Property** | | | | | |
| Church building and acreage | $1,710,000 | $1,282,500 | **$1,463,699 | n/a | $0.00 |
| Located at 3315 Brushy Creek Road Greer, SC 29652 | | | | | |
| * $1,443,735 mortgage plus $15,400 judgment plus $2,600 state tax lien plus $1,964 federal tax lien = $1,463,699. | | | | | |
| **Personal Property** | | | | | |
| Cash | $20 | $20 | $20 | n/a | $0.00 |
| Household furnishings | $2,550 | $1,913 | $1,913 | n/a | $0.00 |
| Miscellaneous books, pictures, etc. | $990 | $743 | $743 | n/a | $0.00 |
| Potential recovery of legal fees paid To Grady Roberts, Esquire for initial chapter 11 case in Atlanta, Ga. Unexpected recovery. Total fees & costs $9,500. | $0.00 | $0.00 | 0.00 | n/a | $0.00 |
| ADT access control, security system | $3,925 | $2,944 | $2,944 | n/a | $0.00 |
| RISCO HC 5000 full color printer & attachments | $9,000 | $6,750 | $6,750 | n/a | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| *Miscellaneous Furnishings & Equipment:* 750 Chairs, 15 speakers, organ, drum set, 10 microphone stands, soundboard, communion table, 26 tables, 3 office tables, baptismal pool, copier, office refrigerator, bookshelf, 4 televisions, 3 dvd players, cash register, treadmill, exercise bike, biceps machine, lower back machine, torso machine, virtual reading machine, and miscellaneous weight machines. | $51,150 | $38,363 | $38,363 | n/a | $0.00 |
| Small copier with attachments | $1,200 | $900 | $900 | n/a | $0.00 |
| ** Assemblies of God Loan Fund holds a lien on all real and personal property of this debtor. | | | | | |
| | | | | ***TOTAL EQUITY*** | ***$0.00*** |

Since priority claims filed in this case total the sum of $3,385, nothing would be available to be distributed to general unsecured creditors in a hypothetical chapter 7. However, the debtors offer a five (5%) percent payout to general unsecured creditors in this plan.

## PROFIT AND LOSS

The following is a summary of profit/loss reports filed with the Court since the filing of the bankruptcy:

| MONTH/YEAR | OCT. 2010 | NOV. 2010 | DEC. 2010 | JAN. 2011*** | FEB. 2011 |
|---|---|---|---|---|---|
| INCOME: | 13,794.72 | 15,333.58 | 14,411.07 | 17,757.99 | 41,846.54 |
| EXPENSE: | 17,265.35 | 16,023.51 | 15,223.14 | 17,742.04 | 34,972.87 |
| NET: | $-3,470.63 | $-863.81 | $-812.07 | $15.95 | $6,873.67 |

*** The expenses reflected above beginning January, 2011, include the agreed upon $7,000 per month mortgage payment to Assemblies of God Loan Fund, who holds a first mortgage lien upon the real property and all personal property of the debtor. The agreement is part of a settlement order entered by this Court on January 26, 2011.

The Debtor-in-Possession has already begun undertaking measures in which to increase profits to successfully fund the plan, and asks for the cooperation of its creditors in this time of reorganization.

**DEBTOR'S SCHEDULE OF PAYMENT DISTRIBUTION TO CREDITORS**

CLASS 1 - ADMINISTRATIVE CLAIMS

**United States Trustee:** 11 U.S.C. §1930(a)(6) provides as follows:
In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under Chapter 11 of Title 11 for each quarter (including any fraction thereof) until the case is closed, dismissed or converted to another chapter. This fee is based upon the disbursements made each quarter by the Debtor-in-Possession, and the amount of such fees are based upon a schedule provided in the above-described statute a copy of which was provided to the Debtor-in-Possession at the beginning of the Chapter 11 case. Such fee shall be payable

on the last day of the calendar month following the calendar quarter for which the fee is owed. The Debtor-in-Possession will continue such payments until the case is closed.

**The Cooper Law Firm**: This creditor is the law firm that filed the chapter 11 case, and continues to represent the debtor in possession. The law firm is owed the sum of $26,000 for contractually agreed upon attorney's fees for such representation. The law firm has to date received the sum of $250. The law firm has agreed to accept the sum of $250 per week, which should pay off the debt in twenty four months. The law firm will file a fee application with the Court for approval of such fees.

CLASS 2 - PRIORITY CLAIMS

**Greenville County Tax Collector**: This creditor filed a proof of claim in the amount of $1,846.20, and will be paid the sum of $54.51 per month, which includes four (4%) percent fixed rate of interest. These payments will begin upon confirmation of the plan, and continue for 36 months thereafter.

**South Carolina Department of Revenue:** This creditor filed a proof of claim, which included a priority claim in the amount of $1,538.78, and will be paid the sum of $45.43 per month, which includes four (4%) percent fixed rate of interest. These payments will begin upon confirmation of the plan, and continue for 36 months thereafter.

CLASS 3(A) THROUGH 3(C) - SECURED CLAIMS

Each of the following claims, if allowed, shall be paid through the plan in equal monthly payments set forth below, until the amount of the Allowed Secured Claim as set forth has been paid in full.

(A) **Assemblies of God Loan Fund:** This creditor filed a claim in the amount of $1,443,735.46, and will be paid according to a "362" settlement agreement filed with the Court and approved on January 26, 2011. The payments began January 1, 2011, in the amount of $7,000 per month, and will increase annually according to an amortization schedule. The agreement includes a 10 day "drop dead" clause for payments, and all other terms of the aforementioned agreement are hereby incorporated by reference into the chapter 11 plan and disclosure statement.

(B) **Marlin Leasing**: This creditor filed a claim in the amount of $19,200.06, and will be paid its contractual payments with interest already incorporated therein at $629 per month. All arrearage through the date of confirmation of the chapter 11 plan shall be placed at the end of the contract, thereby extending the maturity date of the loan.

(C) **South Carolina Department of Revenue**: This creditor filed a claim, which included a secured portion in the amount of $2,516.96, and will be paid the sum of $47.00 per month, which includes four (4%) per cent fixed rate of interest until the claim is paid in full.

CLASS 4 - JUDGMENT CREDITOR CLAIMS AND MECHANICS LIENS:  NONE

CLASS 5 – EXECUTORY CONTRACTS & UNEXPIRED LEASES

All Contracts which existed as of the Filing Date between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been accepted by Final Order or in the Plan of Reorganization, are hereby specifically rejected. Any person or entity claiming rights under an executory contract or unexpired lease rejected pursuant to the provisions of this Article or 11 U.S.C. Section 365 shall have thirty (30) days after the Confirmation Date to file a proof of claim, or such additional time as the Court, before that date, may allow.  This Class is deemed not impaired.

CLASS 6 – CLAIMS OF GENERAL UNSECURED CREDITORS

Claims of General Unsecured Creditors are divided into two separate classes as follows:

- **Class 6(a):** Those claims that do not exceed $500.00 shall be paid five (5%) percent of their allowed claims over a period of 12 months after confirmation of the chapter 11 plan.
- **Class 6(b):** Those claims that exceed $500 shall be paid five (5%) percent of their allowed claims over a period of 24 months after confirmation of the chapter 11 plan.

**Class 6(a) consists of the following creditors:**

**Citibank**  filed a proof of claim in the amount of $457.08, which will be paid at five (5%) percent over 12 months, resulting in equal payments of $1.90 per month for a total payout of $22.85.

**Riso, Inc**. did not file a proof of claim.  However, the debtor scheduled a claim in the amount of $1,880.45, which will be paid at five (5%) percent over 12 months, resulting in equal payments of $7.84 per month for a total payout of $94.02.

**South Carolina Department of Revenue** filed a proof of claim, which included a general unsecured amount of $1,932.50, which will be paid at five (5%) percent over 12 months, resulting in equal payments of $8.05 per month for a total payout of $96.63.

**United Chemical & Supply Co.** filed a proof of claim in the amount of $472.50, which well be paid at five (5%) percent over 12 months, resulting in equal payments of $1.97 per month for a total payout of $23.63.

**Class 6(b) consists of the following creditors:**

**Jeans Plus** did not file a proof of claim.  However, the debtor scheduled a claim in the amount of $5,805, which will be paid at five (5%) percent over 24 months, resulting in equal payments of $12.09 per month for a total payout of $290.25.

**TBF Financial LLC** filed a proof of claim in the amount of $6,562.74, which will be paid at five (5%) percent over 24 months, resulting in equal payments of $13.67 per month for a total payout of $328.14.

**The Palmetto Bank** did not file a proof of claim.  However, the debtor scheduled a claim in the amount of $5,070.24 which will be paid at five (5%) percent over 24 months, resulting in equal payments of $10.56 per month for a total payout of $253.51.

**Thomas KF Wong & Vivian A. Wong** did not file a proof of claim.  However, the debtor scheduled a claim in the amount of $6,000, which will be paid at five (5%) percent over 24 months, resulting in equal payments of $12.50 per month for a total payout of $300.00.

**CLASS 7.** EQUITY OWNERSHIP

**DEBTOR IS A CORPORATION.**

/s/ Robert H. Cooper
Robert H. Cooper
District Court ID #5670
THE COOPER LAW FIRM
Attorneys for the Debtor
3523 Pelham Road, Suite B
Greenville, South Carolina 29615
(864) 271-9911 phone
(864) 232-5236 facsimile
rhcooper@thecooperlawfirm.com

April  4, 2011
Greenville, South Carolina